<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICK J. PARRILLO, | Case No.:  2:17-cv-01974 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL, | |
| Defendant. | |

**APPEARANCES:**

ABRAHAM S. ALTER
LANGTON & ALTER
P.O. BOX 1798
1600 ST. GEORGES AVENUE
RAHWAY, NJ  07065
    On behalf of Plaintiff

EVELYN ROSE MARIE PROTANO
SPECIAL ASSISTANT U.S. ATTORNEY
c/o SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA 19101
    On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Patrick J. Parrillo for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes

1

Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled prior to the date last insured.

## I.    PROCEDURAL HISTORY

On May 29, 2013, Plaintiff filed an application for DIB alleging a disability onset date of April 1, 2011.  (R. 386-91.)[2]  On September 19, 2013, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 191-95.)[3]  Plaintiff filed for reconsideration, and his application was again denied on November 13, 2013.  (R. 199-201.)  On June 2, 2015, an Administrative Law Judge held an initial hearing on Plaintiff's application with testimony from Plaintiff and a VE.  (R. 28-70.)  On August 28, 2015, Plaintiff waived his appearance at a supplemental hearing with testimony from a different VE and a medical expert.  (R. 71-134.)  Plaintiff was represented by counsel at both hearings.  On September 18, 2015, the ALJ issued a

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]"  *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018). However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] "R." refers to the continuous pagination of the administrative record.  ECF No. 3.

[3] Also on May 29, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. §§ 1381, et seq.  The application was approved on October 31, 2013, finding Plaintiff disabled as of his application date pursuant to Grid Rule 201.02, which applies to individuals of advanced age whose education is limited or less and whose skills are not transferable – as of his application date.  (R. 12, 215-32.)  This appeal is limited to Plaintiff's DIB application.

decision denying Plaintiff's application. (R. 9-27.) On January 19, 2017, the Appeals Council denied Plaintiff's request for appeal (R. 1-6), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.

On March 23, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3). ECF No. 1. On June 13, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[4] The case was reassigned to the undersigned Magistrate Judge on June 27, 2018.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications for DIB. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

---

[4] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed

4

to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**      **Standard for Awarding Benefits**

      Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a). An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment must be established by objective medical evidence from an acceptable medical source and cannot be

established by a statement of symptoms, a diagnosis, or a medical opinion. *Id.* § 404.1521.

The process for determining an adult's claim for DIB involves a five-step sequential inquiry. 20 C.F.R. § 404.1520(a)(4).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id.* § 404.1512; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. § 404.1523(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id.* §§ 404.1572(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this step, the ALJ decides whether the claimant has an impairment or a combination of such impairments that is severe. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id.* § 404.1522. If the

---

[5] This case arises from a claim filed before March 27, 217 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. § 404.1527.

claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence.  *Id*. § 404.1526(b)(2).  If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months.  *Id*. § 404.1509.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work.  20 C.F.R. §§ 404.1520(e) & (f).  RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date.  In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *Id*. §§ 404.1560, 404.1565.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the

national economy.  20 C.F.R. § 404.1520(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.  Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. §§ 404.1569a(a) & (b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. § 404.1569a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. § 404.1569a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations.  *Id*. § 404.1569a(d).  If the claimant has solely non-exertional limitations,

then the Grid Rules provide a framework for decision-making.  *Id*. § 404.1569a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was fifty-six years old on his alleged onset date (April 1, 2011) and his date last insured was September 30, 2011.  (R. 15, 21, 66.)[6]  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date and his date last insured.  (R. 15.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments through his date last insured:  chronic obstructive pulmonary disease ("COPD"), and heroin abuse.  (R. 15.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 15.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work subject to various exertional and non-exertional limitations.  (R. 16.)  The ALJ also found at Step Four that Plaintiff was capable of performing his past relevant work.  (R. 20.)  Alternatively, the ALJ found at Step Five that a finding of not disabled would be directed by the Grid Rules if Plaintiff had the RFC to perform the full range of medium work.  (R. 20-21.)  The ALJ also found at Step Five that certain jobs – sandwich maker, hand packager, and warehouse worker – existed in significant numbers in national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (R. 21-22.)  The ALJ concluded that Plaintiff was not disabled at any time between the alleged onset date and date last insured.  The ALJ further concluded "that, in the alternative, even if the claimant were not able to perform medium level work prior to the date last insured, September 30, 2011, any further restrictions can be attributed to the fact that he inhaled two bags of heroin a day for years until December 2011."  (R. 22.)

---

[6] Plaintiff's brief reflects – as did the ALJ's decision – an onset date of April 1, 2011, notwithstanding a letter to the Appeals Council dated November 18, 2015 advising that Plaintiff "hereby amends his alleged onset date to coincide with the DLI of September 30, 2011[.]"  (R. 505.)

Plaintiff contends that remand is warranted because the ALJ erred at Steps Two through Five of the sequential inquiry. At Step Two, Plaintiff argues that the ALJ erred by not finding that Plaintiff had other severe impairments. At Step Three, Plaintiff argues that the ALJ erred by not finding that Plaintiff medically equalled a Listing and also by not combining Plaintiff's impairments in a medical equivalence analysis. At Step Four, Plaintiff argues that substantial evidence does not support either the ALJ's RFC finding or the ALJ's finding that Plaintiff can perform his past relevant work. At Step Five, Plaintiff argues that the ALJ erred by not conveying to the VE all of Plaintiff's credibly established limitations. Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF EVIDENCE

The medical evidence is sparse for the relevant period between Plaintiff's alleged onset date and date last insured (April 1 through September 30, 2011). At the June 2, 2015 hearing, the earliest medical record was from Plaintiff's December 2011 hospitalization for substance abuse and withdrawal, with no record of any subsequent medical treatment until April 2012. Plaintiff testified that he became eligible for Medicaid at some point in 2011 and began monthly treatment with Dr. Medhat El-Amir (internist), who diagnosed Plaintiff's COPD. Plaintiff further testified that he was not treated by any physician other than Dr. El-Amir in 2011. The ALJ advised Plaintiff's counsel that she was "going to give [him] the chance to get the records from Dr. [El-Amir]." (R. 37-40; *see* 48-49.) Prior to the August 2015 hearing, the record was supplemented by ten additional pages consisting of: lab report dated May 26, 2011; Examination Report

completed on July 8, 2011 by Dr. El-Amir, a treating internist from Immediate Care; and lab report dated November 19, 2011.  (R. 635-43.)

The medical evidence *after* the relevant period includes:

- Unsigned Examination Report completed by Lauro Rocha (nurse practitioner), dated December 3, 2011.  (R. 633-34.)

- Plaintiffs hospitalization records for substance abuse and withdrawal, dated December 8-12, 2011.  (R. 506-62.)

- General Medical Report completed by Dr. Rizwana Khan (internist), dated June 25, 2012.  (R. 563-69.)

- Treatment records from Lauro Rocha (nurse practitioner) with New Jersey Medical & Health Associates, dated June 25, 29 and August 16, 2012.  (R. 570-79.)

- Treatment records from Dr. Nivedita Bansal (internist) with Horizon Health Center, dated April 16, May 7, June 4, & October 22, 2012, and March 5 & 26, 2013.  (R. 589-607.)

- Treatment notes from Dr. Agron Elezi (internist) with Grove Medical Associates, dated March 1 and April 16, 2013.  (R. 612-15.)

- Report from consultative examiner Dr. Alexander Hoffman (internist), who ordered and reviewed diagnostic testing and imaging reports, dated August 10, 2012.  (R. 570-79.)

- Report from consultative examiner Dr. Rahel Eyassu (internist), who ordered and reviewed diagnostic testing and imaging reports, dated August 30, 2013.  (R. 616-30.)

The medical record also includes the testimony of Dr. Dorothy Kunstadt from the August 28, 2015.  (R. 75-106.)  Dr. Kunstadt was appointed by the Commissioner at Plaintiff's request pursuant to Social Security Ruling 83-20, *Titles II & XVI: Onset of Disability*, 1983 WL 31249 (S.S.A. 1983), *rescinded by* 83 Fed. Reg. 49613 (Oct. 2, 2018):

> ATTY: And clearly, while we have no actual medical evidence from September 2011, it is undoubted, undoubted medically probably that the claimant's hepatitis-C which resulted in hepatic coma in June [2015], was plaguing him way before the DLI.  In that regard, Your Honor, we would ask that if Your Honor is unconvinced that under SSR 83-20 you schedule the testimony of a medical advisor to attribute a medical basis for any onset date Your Honor might conclude.  Thank you.

(R. 33; *see* R. 58-61, 69, 498 (renewed requests by Plaintiff's counsel during initial hearing for medical expert to ascertain onset date of Plaintiff's hepatitis C).)[7]

In addition to Plaintiff's testimony from the June 2015 hearing (R. 34-58), the non-medical evidence in the record consists of Plaintiff's Function Reports dated June 9, 2012 (R. 424-32) and July 22, 2013 (R. 453-61); and VE testimony from the June 2 and August 28, 2015 hearings (R. 62-69, 108-32). Plaintiff's testimony included that he inhaled two bags of heroin a day for a year prior to his date last insured, and "off and on" for at least the previous three years.

## V.   DISCUSSION

### A.   <u>Step Two.</u>

Plaintiff first attacks the ALJ's Step Two finding that:

> [P]rior to the date last insured, the claimant's back pain, hepatitis A, B, and C, and knee pain, were not medically determinable impairments as there was no evidence that any of these impairments resulted from anatomical, physiological, and/or psychological abnormalities which are established by clinical and laboratory diagnostic techniques generally accepted in the medical community during the period of consideration. The claimant's hepatitis was not diagnosed until after the claimant's date last insured.

(R. 15.) Specifically, Plaintiff argues:

> [B]oth hepatitis and malnourishment (and the link between the two) were omitted from the step 2 severity finding with predictable consequences: (1) no combination with acknowledged impairments at step 3 for discussion of medical equivalence[; and] (2) no inclusion of the omitted impairments in the assessment of RFC.

ECF No. 7 at 16. The Court need not decide this argument because the ALJ ultimately found in Plaintiff's favor at Step Two. Thus, "even if [the ALJ] had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless." *Salles v. Comm'r of*

---

[7] Social Security Ruling 83-20 applies to SSA determinations that, like the ALJ decision in this case, were made prior to October 2, 2018.

*Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *see Rivera v. Comm'r of Soc. Sec.*, 164 F.

App'x 260, 261 n.2 (3d Cir. 2006) (same); *Ross v. Astrue*, No. 08-cv-5282 (SDW), 2010 WL

777398, at *5 (D.N.J. Mar. 8, 2010) (same).   The Court addresses below Plaintiff's arguments

regarding the ALJ's consideration of Plaintiff's hepatitis and malnourishment at Steps Three and

Four.  *See* 20 C.F.R. § 404.1523(c) (after finding at least one severe impairment at Step Two, ALJ

must consider all impairments – severe and non-severe – in remaining steps of sequential inquiry).

**B.**    **Step Three.**

Plaintiff next attacks the ALJ's Step Three finding that:

> No treating or examining physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the medical evidence of record.   Nevertheless, the undersigned has carefully considered the specific requirements of the relevant listings, and is satisfied that no listing is met or equaled.

> The medical expert testified that with respect to the claimant's chronic obstructive pulmonary disease, the pulmonary function tests are not sufficient to meet the criteria for paragraph B of [L]isting 3.02.

(R. 15-16.)[8]  Plaintiff's brief is confusing in its conflation of Steps Two and Three.  As best the

Court can discern, Plaintiff argues that the ALJ erred:  (1) by finding that Plaintiff's COPD did not

meet any Listing; (2) by finding that Plaintiff's hepatitis C did not meet any Listing; (3) by finding

that Plaintiff's malnourishment did not meet any Listing; and (4) by failing to consider whether

the combination of Plaintiff's COPD, hepatitis C, and malnourishment was medically equivalent

to any Listing.  The Court disagrees.

**1.**    **Listing 3.02.**

Plaintiff cannot demonstrate that he met all the requirements for Listing 3.02 (Chronic

pulmonary insufficiency) between April 1 and September 30, 2011.  Listing 3.02A provides:

---

[8] The Court analyzes Step Three, as did the ALJ, using the Listings in effect on the ALJ's decision date.

"Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.)." *See* Social Security Administration Program Operations Manual System ("POMS") DI 34123.009, *Respiratory Listings from 04/13/06 to 10/06/16*, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434123009. Plaintiff points to no pulmonary function testing results from the relevant period that would satisfy the Table I values. Results from August 10, 2012 – nearly one year after Plaintiff's date last insured – were normal (R. 571), and results from August 30, 2013 – nearly two years after Plaintiff's date last insured – were abnormal but not at Listing levels (R. 82, 92, 617, 621).

### 2. Listing 5.05.

Plaintiff cannot demonstrate that he met all the requirements for Listing 5.05 (Chronic liver disease) between April 1 and September 30, 2011, which is the relevant Listing for analyzing chronic viral hepatitis infections including hepatitis C. *See* POMS DI 34125.009, *Digestive Listings from 12/18/07 to 1/16/17*, available at https://secure.ssa.gov/poms.nsf/lnx/0434125009, Listing 5.00D(4)(a)(ii).[9] Hepatitis C "is diagnosed by the detection of hepatitis C

---

[9] Listing 5.05 requires:

Chronic liver disease, with:

A. Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood. Consider under a disability for 1 year following the last documented transfusion; thereafter, evaluate the residual impairment(s).

OR

B. Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least two evaluations at least 60 days apart within a consecutive 6-month period. Each evaluation must be documented by:

1. Paracentesis or thoracentesis; or

2.   Appropriate medically acceptable imaging or physical examination and one of the following:

a.   Serum albumin of 3.0 g/dL or less; or

b.   International Normalized Ratio (INR) of at least 1.5.

OR

C.   Spontaneous bacterial peritonitis with peritoneal fluid containing an absolute neutrophil count of at least 250 cells/mm3.

OR

D.   Hepatorenal syndrome as described in 5.00D8, with one of the following:

1.   Serum creatinine elevation of at least 2 mg/dL; or

2.   Oliguria with 24-hour urine output less than 500 mL; or

3.   Sodium retention with urine sodium less than 10 mEq per liter.

OR

E.   Hepatopulmonary syndrome as described in 5.00D9, with:

1.   Arterial oxygenation (PaO2) on room air of:

a.   60 mm Hg or less, at test sites less than 3000 feet above sea level, or

b.   55 mm Hg or less, at test sites from 3000 to 6000 feet, or

c.   50 mm Hg or less, at test sites above 6000 feet; or

2.   Documentation of intrapulmonary arteriovenous shunting by contrast-enhanced echocardiography or macroaggregated albumin lung perfusion scan.

OR

F.   Hepatic encephalopathy as described in 5.00D10, with 1 and either 2 or 3:

1.   Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60 days apart within a consecutive 6-month period; and

2.   History of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or

3.   One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1:

a.   Asterixis or other fluctuating physical neurological abnormalities; or

b.   Electroencephalogram (EEG) demonstrating triphasic slow wave activity; or

c.   Serum albumin of 3.0 g/dL or less; or

d.   International Normalized Ratio (INR) of 1.5 or greater.

OR

G.   End stage liver disease with SSA CLD scores of 22 or greater calculated as described in 5.00D11.  Consider under a disability from at least the date of the first score.

*Id.*, Listing 5.05.

16

viral RNA in the blood *for at least 6 months*." *Id.*, Listing 5.00D(4)(c)(i) (emphasis added). As the medical expert opined and the ALJ found, Plaintiff cannot prove through blood test results that he had hepatitis C for at least 6 consecutive months prior to his date last insured. The earliest confirmatory blood test result in the record is not dated until November 19, 2011 (R. 641) – nearly two months after Plaintiff's date last insured. Nor is there any medical evidence during the relevant period that would satisfy the requirements for Listings 5.05A, B, C, or D.

      **3.**      **Listing 5.08.**

Plaintiff cannot demonstrate that he met all the requirements for Listing 5.08 between April 1 and September 30, 2011. Listing 5.08 provides: "Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." *Id.*, Listing 5.08. First, there is no evidence that Plaintiff experienced weight loss during the relevant period. According to the U.S. Center for Disease Controls and Prevention, a "normal weight range" for a person of Plaintiff's height at 5 feet 7 inches is between 118 and 159 pounds, with a "normal BMI healthy weight category between 18.5 and 24.9. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/metric_bmi_calculator/bmi_calculator.html. Dr. Hoffman's consultative examination report indicates that Plaintiff weighed 112 pounds in August 2012, with a BMI of 17.5. (R. 570.)[10] During his examination, Plaintiff stated that he had weighed approximately 145 pounds in August 2011 and 130 pounds in January 2012. (R. 570.) However, Examination Reports completed by Dr. El-Amir indicate that Plaintiff weighed 118 pounds on both July 8 and December

---

[10] The State Agency reviewing consultants' initial determination findings reflect that Plaintiff weighed 112 pounds when examined by Dr. Hoffman, with a BMI of 12.8. *See* ECF No. 7 at 15 (citing R. 144-52). This appears to be an error; for a person of Plaintiff's height, a BMI of 12.8 corresponds to a weight of 80 pounds.

3, 2011, with a BMI of 18.5 – i.e., within the normal range.  (R. 634-35.)[11]  It is difficult to conclude

that 6 pounds over an 8-month period constitutes the magnitude of weight loss by an adult male

contemplated by Listing 5.08.  Second, there is no evidence that Plaintiff's weight loss was caused

by a digestive disorder (i.e., hepatitis C) as opposed to his drug use.  Third, there is no evidence

that Plaintiff's BMI fell below 17.50 *once* during the relevant period, let alone at least twice within

60 days apart over a consecutive 6-month period.

### 4.    Medical Equivalence.

Where a claimant has "a combination of impairments, no one of which meets a [L]isting

(*see* § 404.1525(c)(3)), [the ALJ] will compare [the claimant's] findings with those for closely

analogous listed impairments."  20 C.F.R. § 404.1526(b)(3).  To find that a combination of

impairments is medically equivalent to a Listing, it must be "at least of equal medical

significance."  *Id.*  "The ALJ will thus review the record and determine whether the ailments in

combination were equal to any of the enumerated impairments."  *Gainey v. Astrue*, No. 10-cv-

1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (citing 20 C.F.R. § 404.1520(d)).

The ALJ need not "use particular language or adhere to a particular format" in the Step

Three analysis so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered

the appropriate factors[.]"  *Jones*, 364 F.3d at 505 ("the function of *Burnett* is to ensure that there

is sufficient development of the record and explanation of findings to permit meaningful review").

The ALJ also need not explicitly state that the claimant's impairments were considered both

individually and in combination.  *See Gainey*, 2011 WL 1560865, at *12 (citing *McQueen v.*

---

[11] Plaintiff asserts without citation that his BMI was 12.8 in July 2011.  This contradicts the record which, as explained above, demonstrates that Plaintiff's BMI was 18.5 in July 2011.  *See also* ECF No. 7 at n.5 (conceding that Plaintiff's exceeds the weight at which a 67" tall male who suffers from a digestive disorder is deemed "disablingly malnourished" under Listing 5.08).

*Comm'r of Soc. Sec.*, 322 F. App'x 240, 242–43 (3d Cir. 2009)).  Accordingly, the Court must determine whether the ALJ's evidentiary discussion – regardless of its placement in the decision – supports a finding of not disabled at Step Three pursuant to the applicable legal standards of review.  *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146-47 (3d Cir. 2007).

The Court rejects Plaintiff's argument that the ALJ erred by failing to consider whether any combination of his COPD, hepatitis C, or malnourishment was medically equivalent to any Listing.  The ALJ explicitly stated in the decision that he considered Plaintiff's impairments in combination.  (R. 15.)  "[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so."  *Gainey*, 2011 WL 1560865, at *12 (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).  Moreover, the ALJ's evidentiary discussion at Steps Two and Four provided ample basis for meaningful judicial review of the relevant Listing criteria as applied to Plaintiff's combined impairments.  The ALJ repeatedly discussed throughout the decision the medical evidence, and lack thereof, from the relevant period regarding Plaintiff's COPD, hepatitis C, and malnourishment.  The ALJ cannot fault the ALJ for failure to consider what does not exist.

Further, even if the ALJ had erred by not adequately considering all of claimant's impairments in combination, the Court finds that any such error would be harmless.  "It is not enough to simply call foul and punt to this Court by arguing without support or analysis that the ALJ did not adequately conduct the Step Three analysis."  *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008).  Remand is not warranted where, as here, the claimant complains "in vague terms" that some impairments were not properly combined without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not."  *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *see Poulos v. Comm'r of*

*Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (affirming Step Three determination where claimant did

not "point to any medical evidence ignored by the ALJ that would indicate that [claimant's]

impairments are equivalent to one of the Listings the ALJ identified"); *Milano v. Comm'r of Soc.*

*Sec.*, 152 F. App'x 166, 169 (3d Cir. 2005) (affirming ALJ's finding where claimant "has not

attempted to show" that impairments equal any specific Listing and merely concludes that he has

"'severe medical conditions' that 'might' do so") (internal citation omitted)).

    The Court therefore finds that the ALJ's Step Three finding was supported by substantial

evidence.

### C.     Step Four.

#### 1.     RFC.

The ALJ first found at Step Four that, through September 30, 2011:

> [T]he claimant had the residual functional capacity to perform medium work as
> defined in 20 CFR 404.1567(c) except the claimant was able to lift and carry
> twenty-five pounds frequently, and fifty pounds occasionally, was able to sit for
> about six hours of an eight hour workday, and was able to stand and/or walk for
> about 6 hours of an eight hour workday, but should avoid concentrated exposure to
> extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, smoke, gases,
> poor ventilation and so forth.

(R. 16.)[12]  Thus, the ALJ's RFC finding included both exertional and non-exertional limitations.

*See* Social Security Ruling 83-10, *Titles II & XVI: Determining Capability To Do Other Work —*

*The Medical-Vocational Rules Of Appendix 2*, 1983 WL 31251 (S.S.A. 1983).

    Plaintiff argues that the RFC finding was not supported by substantial evidence because:

(1) the ALJ's decision "never mentions" the findings of the State Agency reviewing consultants;

(2) the ALJ erroneously ascribed little weight to an Examination Report completed by one of

---

[12] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 CFR § 404.1567(c).

Plaintiff's treating physicians; (3) the ALJ erroneously accepted certain aspects and rejected other aspects of the medical expert's opinion; and (4) the ALJ erroneously omitted any assessment of Plaintiff's non-severe impairments.  The Court disagrees.

### a) *Medical Opinions.*

Plaintiff wrongly asserts that the ALJ failed to consider that the State Agency reviewing consultants, "whose bias is certainly not towards the social security claimant, found plaintiff's RFC to be no more than 'a narrow range of light'" exertion (ECF No. 7 at 37 n.6 (quoting R. 139)). The ALJ expressly stated:

> The undersigned assigns no weight to the State Agency's medical consultants' opinions as they considered a larger period of consideration tha[n] should be considered in the claimant's request for Title II benefits.  In this matter, the sole period of consideration is from the alleged onset date of April 1, 2011 to the date last insured, September 30, 2011.  There is no way to ascertain which portion of the opinions apply to this specific time period (Exhibits 1A [(R.135-43)], 2A ([R. 144-52)], 5A [(R. 155-62)], 6A [(R. 163-70)], and 9A [(R. 173-81)]).

(R. 20.)  The Court finds no error in the ALJ's assessment.

As to the ALJ's assessment of the opinions from Drs. El-Amir and Kunstadt, the ALJ was required to give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  "[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  However, a treating physician's "opinion" that a claimant is disabled and unable to work can never be given controlling weight because that is an administrative finding reserved to the Commissioner.  20 CFR § 404.1527(d).  Even where a treating opinion is

not required to be given controlling weight, the opinion still may be entitled to some deference based on the ALJ's consideration of the following factors, which the ALJ must also consider as to non-treating and non-examining opinions: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. 20 C.F.R. § 404.1527(c)(2)-(6); *see Plummer*, 186 F.3d at 429 (ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").

Plaintiff complains that the ALJ ascribed little weight to Dr. El-Amir's July 2011 treating opinion that Plaintiff was unable to work for less than 6 months because of his COPD. (R. 19.) Notwithstanding Plaintiff's testimony that he saw Dr. El-Amir monthly in 2011 after becoming eligible for Medicaid, the record contains no treatment records. Dr. El-Amir's checkbox indication that Plaintiff was subject to unspecified limitations in walking, climbing, and lifting offers no guidance as to Plaintiff's functional abilities for these exertional activities. That the ALJ found Plaintiff's COPD to be a severe impairment, and that the Commissioner ultimately concluded that Plaintiff's COPD was disabling in May 2013, do not demonstrate that Plaintiff's COPD was disabling in September 2011. The Court finds no error in the ALJ's assessment of Dr. El-Amir's opinion.

Plaintiff also complains about the ALJ's assessment of Dr. Kunstadt's expert opinion. The ALJ ascribed significant weight to three aspects of Dr. Kunstadt's opinion: that there was no evidence to support a finding that Plaintiff met any Listing prior to September 30, 2011; that she could offer no opinion as to the status of Plaintiff's liver functioning prior to September 30, 2011 (because hepatitis C symptoms can advance rapidly after an unknown event, such that Plaintiff

could have been infected for years without consequences); and that she could not attribute Plaintiff's weight loss during the relevant period to hepatitis C (because other causes, including his drug abuse, could have contributed).  (R. 17, 19.)  The ALJ ascribed little weight to Dr. Kunstadt's opinion that, during the relevant period, Plaintiff "probably" was precluded by his COPD from lifting 10 pounds frequently and had a low BMI.  The ALJ rejected this aspect because it was "vague and speculative" with no substantiating medical records.  (R. 19.)  Contrary to Plaintiff's assertion (ECF No. 7 at 28), the ALJ was not required to adopt all limitations assigned by Dr. Kunstadt even though her opinion was ascribed substantial weight.  *See Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014).

As to Plaintiff's lifting/carrying abilities, Plaintiff testified in response to questioning by the ALJ that he could lift "about 40 pounds" in September 2011.  (R. 52, 54.)  When subsequently asked the same question by his counsel, Plaintiff responded that he could lift 20 pounds five times an hour.  (R. 57.)  The ALJ did not err by crediting Plaintiff's testimony over an opinion formed by Dr. Kunstadt based on pulmonary testing results from August 2012, nearly one year after the date last insured.  Notably, neither Dr. El-Amir nor PA Rocha limited Plaintiff to any particular lifting/carrying restriction in respective Examination Reports from July and December 2011 Examination Reports.  Moreover, the VE testified that Plaintiff was able to perform the position both as he actually performed it (at heavy exertion level) and how it is generally performed (at light exertion level).  (R. 110, 112.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 CFR § 404.1567(c).  Thus, to the extent the VE erred by rejecting Dr. Kunstadt's opinion that Plaintiff was restricted to lifting/carrying 10 pounds, any such error was harmless.  *See* Social Security Ruling 82-61, *Titles*

*II & XVI:  Past Relevant Work – The Particular Job Or The Occupation As Generally Performed*, 1982 WL 31387 (S.S.A. 1982).

As to Plaintiff's BMI, Dr. Kunstadt's testimony that Plaintiff probably had a low BMI during the relevant period was in response to questioning from Plaintiff's counsel that conflicts with the record evidence.  Those questions expressly assumed that Plaintiff's BMI in August 2012 was 12.8, that he weighed 130 pounds in January 2012, and that he had lost over thirty pounds between August 2011 and August 2012.  (R. 89-90.)  But as explained in Section V.B.3. above, Dr. El-Amir's Examination Reports indicate that Plaintiff weighed 118 pounds in both July and August 2018 with a BMI of 18.5.  Dr. Kunstadt's testimony that "a normal BMI is 25 is also inconsistent with multiple U.S. government sources indicating that a normal BMI range is between 18.5 and 24.9.[13]  Moreover, neither Dr. Kunstadt nor Plaintiff identifies any specific functional restriction in his ability to work during the relevant period as a result of "a low BMI" other than lifting/carrying up to 10 pounds (discussed above).  Thus, to the extent the VE erred by rejecting Dr. Kunstadt's opinion that Plaintiff had a low BMI, any such error was harmless.

### c)    *Non-Severe Impairments.*

Plaintiff summarily argues that his hepatitis C and malnourishment restricted him to less than medium exertion level work and does not identify any specific resulting functional restrictions in his ability to work during the relevant period (aside from lifting/carrying).  Based on the sparse record for the relevant period and Dr. Kunstadt's opinion, the Court cannot conclude that substantial evidence supported any additional RFC limitations.

---

[13]    *See*, *e.g*.,  https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/metric_bmi_calculator/ bmi_calculator.html;  https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm;  https:// healthfinder.gov/FindServices/SearchContext.aspx?topic=14690

The Court therefore finds that the ALJ's RFC finding was supported by substantial evidence.  *See*, *e.g., Hartranft*, 181 F.3d at 360 ("Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' … We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.") (internal citations omitted).

### 2.    Past Relevant Work.

The ALJ next found at Step Four that Plaintiff's past relevant work from 2008-2009 was most closely related to the position of "Street Cleaner" (DOT #955.687-018), classified as light exertion level but *actually* performed at times as *medium* exertion level.  The ALJ also found that an individual with Plaintiff's RFC would be able to perform the Street Cleaner position as *generally* performed – i.e., as *light* exertion level.  (R. 20.)  Plaintiff contends that the ALJ's Step Four findings were not supported by substantial evidence for two reasons.  First, Plaintiff argues that the ALJ erred by not finding that Plaintiff worked from 2008-2009 as a "Clean-Up Worker" (DOT #381.687-014), categorized by the DOT as heavy exertion level (*see* ECF No. 7 at 35 (citing R. 415-16 (Work History Report dated June 9, 2012)).[14]  Second, Plaintiff argues that the ALJ erred by adopting the VE's testimony that the Street Cleaner position "did not expose plaintiff to the elements and pulmonary irritants as announced in the RFC."  *Id*.  The Court rejects both arguments.

---

[14] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 100 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 CFR § 404.1567(d).

As a threshold matter, the Court observes that Plaintiff's counsel did not object during the supplemental hearing to the VE's classification of Plaintiff's past relevant work as a Clean-Up Worker:

ALJ:    This gentleman has one job I think that is past relevant work, and that is work as a street cleaner. But he testified that he was cleaning up the parking lot. It was called a janitor, but he was really cleaning up a parking lot. And it's more like a street cleaner. Exposure to weather was constant. Extreme cold and heat were not present, but not I'll stop reading there. So part work is a street cleaner, but cleaning up a parking lot.

VE:     Okay.

ALJ:    Do you stipulate to that, Counsel? That was what it came down to before?

ATTY:   I can't stipulate to that. I thought his past relevant work was a sandwich maker which was medium. And the other one was a security and a cleaner in a parking lot which was not SGA. He did it for parts of two years. Made $3,000 one year and $5,000 in another year.

ALJ:    No, I never count them if they're not SGA. I'm not going to take testimony on that.

ATTY:   Right. So that was part of his job. I think the only job that I saw, and again I could be wrong, was medium sandwich maker which I think Mr. Steinbrenner said was medium last time although I'm not putting words in his mouth.

ALJ:    In 2007, 2008, and 2009, he made SGA.

ATTY:   Yes, as?

ALJ:    I'll get there.

ATTY:   Yes, I'm not rushing you.

ALJ:    Jersey City, he worked at Jersey City Associates in those years. He made SGA in 2007 and 2008 at that job.

ATTY:   Yes.

ALJ:    And that is the job that he said was like cleaning the parking lot.

ATTY:   Yes, Koshers & Co.

ALJ:    Koshers and Co. in 2006 for less than SGA.

ATTY:  Oh, yes.  Jersey City Associates.  I see.  I see.

ALJ:  He said, he said what he did, I have that.  Get that back in here.  We cross out the janitorial and went into street cleaner which the, per the DOT was light, and as performed was medium at times, SVP-1.  That was his cleaning up a parking lot more like a street cleaner, weather constant.

ATTY:  Okay.

ALJ:  That was what he testified.

ATTY:  Let's go with that, Your Honor.

(R. 108-10.)

Plaintiff testified that he lifted/carried "[m]aybe 20 pounds, 30 pounds" from a supermarket parking lot into a dumpster.  (R. 44.)  When initially questioned by his counsel, Plaintiff testified that the garbage bags he lifted could not have weighed 50 pounds.  After counsel twice asked Plaintiff the same question – and was admonished by the ALJ for leading the witness, Plaintiff testified that "some" garbage bags weighed more than 50 pounds.  (R. 46.)  However, Plaintiff offers no evidence that he frequently carried more than 50 pounds as required for heavy exertion level work.[15]

Plaintiff's counsel extensively questioned the VE about the RFC's environmental restriction.  (R. 112-20.)  The RFC limits Plaintiff to "*concentrated* exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, smoke, gases, poor ventilation and so forth." (R. 20 (emphasis added).)  The VE repeatedly testified that Plaintiff's past work, as described by the Plaintiff and as classified by the DOT, did *not* involve concentrated exposure.  In fact, the VE read into the transcript the DOT's description of "environmental conditions" for the Street Cleaner

---

[15] Plaintiff points to the State Agency reviewing consultants' finding that he worked as a Clean-Up Worker from 2008-2009.  *See* ECF No. 7 at 35 (citing R. 142).  However, the finding cited by Plaintiff related to a prior DIB application denied in September 2012; and the consultants who reviewed the DIB application at issue here found that Plaintiff worked during 2008-2009 as a "Cleaner, Housekeeping" (DOT #323.687-014), categorized as light exertion level.  (R. 168-69 (initial denial), R. 179 (reconsideration denial).)

position.  The VE also explained why the DOT description did not conflict with his experience. Plaintiff offers no evidence to support a finding that he should be restricted from *any* exposure to various environmental conditions.

The Court therefore finds that substantial evidence supported the ALJ's finding that Plaintiff was able to perform his past relevant work before September 30, 2011.

### D.    <u>Step Five.</u>

Plaintiff argues that "since there is no medical basis or evidentiary opinion allowing [P]laintiff to sustain medium work activity, the hypothetical questions assuming medium work cannot be utilized to carry the Commissioner's [S]tep [Five] burden of proof."  ECF No. 7 at 37. As this argument is a restatement of Plaintiff's attack on the ALJ's RFC finding, the Court refers to its findings above in Section V.C.1.  *See Rutherford v. Barnhart,* 399 F.3d 546, 554 n.8 (3d Cir. 2005).[16]

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled between April 1 and September 30, 2011 as set forth in the accompanying Order.

Dated:  February 26, 2018                           s/ Paul A. Zoss
At Newark, New Jersey                          PAUL A. ZOSS, U.S.M.J.

---

[16] Plaintiff correctly notes that a finding of not disabled would be directed by the Grid Rules at Step Five if the ALJ found at Step Four that Plaintiff both (1) had the RFC to perform the full range of sedentary or light work and (2) could not perform his past relevant work.  Having reviewed the entire record, the Court rejects as unfounded Plaintiff's complaint that the ALJ reached his Step Four findings because they were "the only avenue by which benefits could be denied."  ECF No. 7 at 14; *see id*. at 26 ("As argued initially, the ALJ was faced with an obvious problem in denying this case.  That problem was very simply that due to plaintiff's age, education and prior work experience, the regulations would award him benefits unless he can perform medium work activity.  Very obviously, the ALJ was eager to so find.); *id*. at 35 ("Here, the decision seems to ignore [P]laintiff's actual prior job as inconvenient.); *id*. ("Plaintiff clearly cannot perform that prior heavy job as a maintenance worker and thus the finding that plaintiff can perform a different, invented past work as a street cleaner is illusory.").